## APPEAL OF THE CUYAHOGA CO.

Docket No. 3721. Submitted October 27, 1925. Decided January 21, 1926.

*H. A. Mihills*, *C. P. A.*, and *L. C. Weiss*, *C. P. A.*, for the taxpayer.
*W. Frank Gibbs*, *Esq.*, for the Commissioner.

### Before PHILLIPS and TRAMMELL.

### FINDINGS OF FACT.

Taxpayer is an Ohio corporation with its principal office at Cleveland. In 1892 taxpayer acquired by assignment two leases of adjoining parcels of real estate, located at the intersection of the south side of Superior Avenue and the east side of the Public Square, in the City of Cleveland. One of the leases was executed in 1888 and the other in 1892, and both expire on April 1, 1988. The

leases require the payment of a flat rental during the entire term of $12,100 per annum and the payment of all taxes, assessments, and water rents. The property has a frontage of 165 feet on Superior Avenue and 66 feet on the Public Square.

Superior Avenue is the main thoroughfare between east and west Cleveland. The street cars serving the business section of Cleveland have the Public Square as their terminus. In 1913 the taxpayer's building was in the center of the financial district and was occupied mainly by prominent brokerage and legal firms. On March 1, 1913, taxpayer's leasehold interest had a fair market value of $450,000.

In its income-tax returns taxpayer deducted exhaustion of said leasehold interest upon the basis of a March 1, 1913, value of $500,000. The Commissioner, in computing the deficiency, has allowed exhaustion of such leasehold upon a value of $136,334.87, admitted to be the value of such leasehold when acquired by the taxpayer in 1892.

In 1894 the taxpayer completed the construction of a building on the leased premises, consisting of eight stories and a basement. The ground floor is constructed for the use of retail stores and the upper floors for offices. The elevators—one freight and three passenger—are electrically operated and are of light wire mesh cab construction. They do not go below the ground floor. Some of the stores are reached by stairs leading down from the street level. The building is of steel and brick construction and is lacking in many of the facilities of the more modern office buildings. The corridors in the building have a low wainscoting of Tennessee marble, the trim is wood, toilet facilities are confined to two floors, and only a few of the offices have running water. On the Superior Avenue side the building has three tiers of bay windows and on the public square it has two such bays. The offices are large and, because of the type of construction, the building is difficult of subdivision to meet the needs of present-day tenants.

Commencing in 1918 a large number of modern office buildings have been constructed in the immediate neighborhood of the taxpayer's property. These include the Federal Reserve Bank, the Guaranty Title & Trust Building, and the Union Trust Building. Directly across the Public Square is the Hotel Cleveland, and diagonally across the Public Square is the site for a proposed union station—a project which real estate men of Cleveland consider certain of completion and which will serve not only as a station for the railroad companies entering Cleveland, but also for suburban traffic—the upper floors of which will be constructed for use as offices. These new office buildings have served to make the offices in taxpayer's building less desirable, and at the same time have greatly increased land values

and taxes. By the close of 1918 it could reasonably be anticipated that the useful economic life of the taxpayer's building would have ceased by January 1, 1935, at the latest, and that by that time it would be necessary to demolish its building for the purpose of erecting a larger and more modern building upon the premises. Taxes upon the property increased from $13,341.90 in 1916 to $27,492.47 in 1920, and the assessed valuation from $858,000 to $1,205,810. Rentals, after deduction of expenses of operation, taxes, and insurance, but before deducting depreciation, obsolescence, or amortization of the building or leaseholds, increased from $18,365.16 for 1915 to $25,266.45 for 1918 and to $34,017.58 in 1919. In computing the deficiency the Commissioner allowed depreciation upon the building upon the basis of a life of 50 years from 1894, the date of completion.

### DECISION.

The deficiency should be computed in accordance with the foregoing findings of fact by allowing as deductions (1) exhaustion upon the March 1, 1913, valuation of the leasehold; and (2) wear and tear and obsolescence upon the building, based upon the termination of its useful economic life on December 31, 1934. The basis to be used is the depreciated cost or March 1, 1913, value of the building, used by the Commissioner as the basis in computing the deficiency, which basis was not questioned upon this appeal. Final determination will be settled on 15 days' notice, under Rule 50.